BEULAH LAWRENCE, Admrx. v. CRESCENT AMUSEMENT CO. et al.

Middle Section. May 15, 1928.

Petition for Certiorari denied by Supreme Court, November 23, 1928.

C. H. Rutherford, of Nashville, for plaintiff in error.
Wm. Hume, of Nashville, for defendant in error.

OWEN, J. Beulah Lawrence, Administratrix of the estate of her son, James Lawrence, has appealed from a judgment rendered against her in favor of the Crescent Amusement Company, hereinafter called defendant.

The suit was instituted in the lower court to recover for the wrongful killing of James Lawrence, a young white man about twenty years of age on the ————— night of April, 1926. The defendant was killed by John Weahrenberg, a member of the City Police force of Nashville, Tennessee. James Lawrence was shot by said policeman in a theater operated by the defendant in South Nashville.

The defendant filed a plea of not guilty. The policeman filed a plea of self-defense, or justification. There was a trial before the court and jury, a verdict in favor of both defendants. Upon a motion for a new trial the verdict as to the policeman was set aside and a new trial granted, but overruled as to this defendant. Thereupon the plaintiff took a non-suit as to the policeman; prayed and perfected an appeal to this court, and has assigned six errors, but these six errors raise but one proposition and that is that there is no evidence to support the verdict in favor of the defendant.

Plaintiff's declaration was bottomed on the theory and charged that Weahrenberg, the policeman, was the agent and in the employ of the defendant at the time James Lawrence was shot and killed. Plaintiff relied upon the rule of law announced in Terry v. Burford, 131 Tenn., 477, and Eichengreen v. Railroad, 96 Tenn., 229.

Learned counsel for the plaintiff states that the main question in the case is "Was plaintiff's intestate killed by the policeman, Weahrenberg, while he was engaged in the general service of the Theater Company; or line of his business, as a watchman or guardsman?"

The facts, briefly stated, are as follows:

The defendant's theater had been broken into a number of times at night after the show had closed and the manager of the theater visited the Chief of Police, Smith, of the City of Nashville, and asked for his aid in ferreting out the parties who were breaking into the theater. Chief Smith turned this request over to the Lieutenant in charge of the night force.

It appears that the policemen in Nashville are divided into three squads, or patrols. The night squad, or patrol, has two policemen to each ward. On the night that James Lawrence lost his life the ward in which the defendant company's theater was located was patrolled by the policeman, John Weahrenberg and policeman Graves. Shortly after receiving the complaint from defendant, Weahrenberg and his partner suggested to the theater company's manager that a key be given to the policemen that they might be able to get into the theater after the show was over and probably by so doing they would be able to catch the guilty parties who had been breaking in. This was done and about eleven o'clock of the night of the shooting Weahrenberg and Graves entered the theater, using the key that had been deposited or loaned them. They went down the aisles, using flash lights and as they neared the stage a man ran out. Weahrenberg shot over the man's head, but this party escaped through the rear door. Thereupon Weahrenberg says something grabbed him around the legs, and he was greatly frightened and he shot. The ball entered near the right shoulder of James Lawrence's body, and he died almost instantly. It appears that neither Weahrenberg or Graves knew who the man was that had been killed, but his body was sent to an undertaking establishment and was identified by the plaintiff, his mother, early the next day.

During the progress of the show, the deceased and Bennett, both about the same age, went into the picture theater. They bought their tickets and during the show the deceased turned the night latch on the rear door and suggested to Bennett that they would sleep in the theater that night.

After the show closed these two young men went to the rear door and opened it and got some newspapers and spread them down on the floor. Bennett testified that he thought Lawrence had gone to sleep when the policemen came, that he had not gone to sleep, and when the policemen entered, and he heard them talking, he tried to arouse Lawrence, so that both could make their escape. Bennett ran out.

The proof shows that a number of convicts had escaped from the penitentiary only a day or two before this shooting; that a business

house near this theater was robbed the night before and all the proof indicates that the two policemen were simply doing their duty as members of the police force at the time they entered the theater. There is no proof that Weahrenberg was in the employ of the defendant. He was not an agent of the defendant. He received his orders from his superior officers and the record further shows that it is customary for policemen to carry a number of keys so that they may have access to business houses.

It results that we find no error in the judgment of the lower court. The cases cited and relied on by counsel for plaintiff establish the relation of master and servant, or principal and agent, but such a relation is not established by any evidence in the instant case.

The assignments of error are overruled, and the judgment of the lower court is affirmed.

Heiskell and Senter, JJ., concur.